UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

CHARISSE M. MELOCHE,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

Case No. 1:08-cv-611

Honorable Paul L. Maloney

**REPORT AND RECOMMENDATION**

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On February 17, 2004, plaintiff filed her applications for benefits, claiming a January 24, 2003 onset of disability.[1] (A.R. 73-75, 788-90). Plaintiff's disability insured status expired on December 31, 2004. (A.R. 87). Plaintiff's claims were denied on initial review. (A.R. 32-37, 792-96). On March 21, 2007, plaintiff received a hearing before an administrative law judge (ALJ) at which she was represented by counsel. (A.R. 797-845). On April 10, 2007, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 14-30). On April 21, 2008, the Appeals Council denied review (A.R. 5-7), and the ALJ's decision became the Commissioner's final decision.

---

[1] The ALJ's opinion contains a summary of plaintiff's "multiple prior filings" for DIB and SSI benefits. (A.R. 14-15). The summary is not reproduced here, but it is incorporated by reference.

On June 25, 2008, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claims for DIB and SSI benefits. The issue raised by plaintiff is as follows:

> IS THE ALJ'S DECISION BASED ON "SUBSTANTIAL" EVIDENCE ON THE RECORD AS A WHOLE?

(Plf. Brief at iii, docket # 12). Upon review, I find that the Commissioner's decision is supported by more than substantial evidence. I recommend that the Commissioner's decision be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within

which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## **Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from her alleged onset of disability of January 24, 2003, through December 31, 2004, but not thereafter. Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. The ALJ found that plaintiff had the following severe impairments: "fibromyalgia, depression, and history of substance abuse." (A.R.17). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 17-18). Plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift or carry 20 pounds occasionally and 10 pounds frequently, sit six hours in an eight-hour workday, and stand or walk six hours in an eight-hour workday. She is limited to occasional climbing, balancing, stooping, kneeling,

crouching or crawling. She is moderately limited in her ability to understand, remember, and carry out detailed instructions; to interact appropriately with the general public; to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to change in the work setting.

(A.R. 19).

The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible:

> The undersigned has fully considered the claimant's allegations along with the entire medical record regarding both physical and emotional impairments. However, the objective evidence of record does not substantiate the claimant's allegations of pain and limitation to the extent alleged. She complains of debilitating pain. However, MRI [evidence regarding her] lumbar spine is essentially unchanged since March 2001 and shows only mild disc bulging at L2-3, L3-4, and L-5. Radiographic evidence shows some degenerative changes in the thoracic spine. However, there is no evidence of disc herniation or stenosis in the thoracic or lumbar spine. Furthermore, although examination shows reproducible tenderness in the bilateral sacroiliac region, deep tendon reflexes are 2+ and symmetric in the bilateral lower extremities with gross sensation intact to light touch. Straight leg raising is generally negative and muscle strength is normal. Her gait is normal. Neurological examination is essentially normal. While the claimant is on high dose narcotics to control her alleged pain, there are numerous references in the record with regard to drug seeking behavior. She overuses her medication and has tried several times to get medication from her family physician after it has been refused from Community Mental Health. She has been found to be very manipulative. She also gives conflicting information with regard to [her] symptoms. At one visit, she told the nurse [that] her mood had improved and she was sleeping [well] at night. She was pleasant and interacting well. However, a few minutes later, she came into the visit with her psychiatrist telling him symptoms that [were] diametrically opposed. She was pressing him to put her on a stimulant. However, she had been repeatedly told that given her history of polysubstance dependency, Schedule II narcotics [were] not an option. She became irate over this situation. The record also documents continued marijuana use even though she was previously told this would lower her pain threshold.
>
> Since the decision of Judge Murphy in December 2001, the claimant has persisted with the same pain complaints. She has had no new procedures and has not required frequent or intense treatment for her impairments. She has gone to counseling on a regular basis with good attendance, and has shown improvement with regard to emotional impairments. She continues to struggle with marijuana abuse.

> After considering the evidence of record, the undersigned finds that the claimant's subjective complaints are not credible and not compatible with the objective medical evidence (SSR 96-3p).

(A.R. 25-26). The ALJ found that plaintiff was not disabled at Step 4 of the sequential analysis[2] because she was capable of performing her past relevant work as a housekeeper and janitor. (A.R. 28). Alternatively, the ALJ found that plaintiff was not disabled at Step 5 of the sequential analysis. Plaintiff was 46-years-old as of her alleged onset of disability. She was classified as younger individual at all times relevant to her claim for DIB benefits. She attained age 50 on August 4, 2006, and on and after that date was classified as an individual closely approaching advanced age. (A.R. 28). Plaintiff has a ninth-grade education and is able to communicate in English. (A.R. 21). The transferability of job skills was not at issue because plaintiff had an unskilled work history. The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 9,300 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 840-43). The ALJ held that this constituted a

---

[2]"Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009); *see Lindsley v. Commissioner*, 560 F.3d 601, 602-03 (6th Cir. 2009).

significant number of jobs.  Using Rules 202.17 and 202.10 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled.  (A.R. 14-30).

**1.**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to consider the combination of her severe and non-severe impairments.  (Plf. Brief at 1-5).  The ALJ's opinion clearly stated that he considered plaintiff's impairments in combination.  (A.R. 16).  Given this statement, the ALJ was not required to further elaborate upon his thought processes.  *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987); *see also Simons v. Barnhart* 114 F. App'x 727, 734 (6th Cir. 2004) (The ALJ stated that he was obligated to consider all the claimant's symptoms, found that the claimant had an impairment or combination of impairments that were severe, and the lack of a separate discussion of each of the claimant's multiple impairments "does not mean that the [ALJ] did not consider their combined effect.").  Plaintiff's argument does not provide a basis for disturbing the Commissioner's decision.

**2.**

Plaintiff disagrees with the ALJ's credibility determination regarding her subjective complaints.  Roughly a third of her six-page brief is devoted to selected excerpts from her hearing testimony regarding her back pain.  (Plf. Brief at 3-4).  She makes no attempt to engage the ALJ's credibility determination.  The court does not make its own credibility determinations.  *See Walters v. Commissioner*, 127 F.3d at 528; *see McGlothlin v. Commissioner*, 299 F. App'x 516, 523-24 (6th Cir. 2008).  The court cannot substitute its own credibility determination for the ALJ's.  The court's "review of a decision of the Commissioner of Social Security, made through an administrative law

judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009). I find that the ALJ's credibility determination, previously quoted at length herein, is supported by more than substantial evidence.

**3.**

The conclusion section of plaintiff's initial brief contains references to a "treating doctor" or "treating physician" without identifying the physician whose opinions the ALJ supposedly ignored:

> The treating doctor's opinion is entitled to extra weight because he or she is usually more familiar with the claimant's medical condition than other physicians. *Schisler v. Heckler*, 787 F2d 76 (CA2 1986).

* * *

> All of the Claimant's treating physician's [sic] have corroborated her complaints of chronic, debilitating pain, fibromyalgia, depression and anxiety and this provided ample evidence of [d]isability. *Nelson v. Heckler*, 712 F2d 346 (CA8 1983).

(Plf. Brief at 5-6). James Twesten-O'Toole, M.D., is the only doctor plaintiff referred to in the body of her brief as a treating physician. (*Id.* at 2, 5). She identified Katherine Jawor, D.O., as her "treating psychiatrist." (*Id.* at 5). The court must assume that these were the individuals plaintiff was alluding to in her conclusion. The record shows that the ALJ addressed the opinions of Psychiatrist Jawor and Dr. Twesten-O'Toole at length. He gave controlling weight to Psychiatrist Jawor's opinions regarding plaintiff's mental impairments and carefully explained why Dr. Twesten-O'Tool's opinions were given little weight:

> Further consideration has been given to the opinions of Twesten O'Toole, who has opined that the claimant is unable to obtain or maintain gainful employment because of her conditions and the medications that are required in order to keep her symptoms under control. (Exhibit D28F, pp. 1, 2) [A.R. 626-27]. There is no objective evidence in the record to support limitation to this degree. Therefore, the opinion of Dr. Twesten O'Toole is appropriately discounted.
>
> Dr. Twesten O'Toole completed a medical assessment of ability to do work-related activities (physical) on November 16, 2004. He opined that the claimant could sit one-half to one hour in an eight-hour workday; stand one-half to one hour in an eight-hour workday; and walk up to one-half hour in an eight-hour workday. She could lift or carry five pounds occasionally. She could perform occasional pushing or pulling of up to 10 pounds and reaching above shoulder level. However, she could do no bending, twisting, squatting, kneeling, climbing, crouching, crawling, or stooping. She had difficulty with balance. She must avoid work involving unprotected heights or chemicals. She had moderate restriction for work involving work outside in cold weather and vibration. She had a mild restriction for work involving moving machinery, temperature extremes, fumes, automobiles, and humidity. He indicated that the claimant would be physically and emotionally unsuited to an employer (Exhibit D20F) [A.R. 333-36]. There is no objective evidence in the record to support limitation to this degree. Examination by Dr. Twesten O'Toole shows only reproducible tenderness in the bilateral sacroiliac region. Deep tendon reflexes are 2+ and symmetric in the bilateral lower extremities with gross sensation intact to touch. Straight leg raising is generally negative and muscle strength is normal. Her gait is normal. Neurological examination is essentially normal. Magnetic resonance imaging shows only minimal bulging of the lumbar

and thoracic disks. Furthermore, such opinion appears to rely heavily on the claimant's subjective complaints, which have been found not to be credible. Therefore, the opinion of Dr. Twesten O'Toole is appropriately discounted.

The undersigned has considered the opinion of Dr. Jawor in November 2004, who completed a medical assessment of ability to do work related activities (mental). She opined that the claimant had a fair ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with co-workers, function independently, and maintain attention or concentration. She had a fair ability to understand, remember, and carry out complex, detailed, or simple instructions. She had no limitations in maintaining personal appearance, behaving in an emotionally stable manner, relating predictably in social situations, or in demonstrating reliability. She noted that the claimant's depression was slowly improving (Exhibit D18F) [A.R. 329-30]. Social Security Ruling 96-2p provides that if a treating source's opinion is well-supported and is consistent with the other substantial evidence in the record, it is given controlling weight. Therefore, as the record indicates, the opinion of Dr. Jawor is accorded controlling weight.

Consideration was also given to the opinion of Dr. Twesten O'Toole, M.D., the claimant's treating family physician, who completed a medical assessment of ability to do work-related activities (mental) on November 16, 2004. He opined that the claimant had poor ability to deal with work stresses, function independently, and maintain attention or concentration. She ha[d] a fair ability to relate to co-workers, deal with the public, use judgment, and interact with supervisors. She had poor ability to understand, remember, and carry out complex instructions; but had fair ability to understand, remember, and carry out detailed or simple instructions. She had poor ability to behaving in an emotionally stable manner, relate predictably in social situations, and to demonstrate reliability. She had a fair ability to maintain personal appearance (Exhibit D19F) [A.R. 331-32]. Such opinion is inconsistent with mental health records and Dr. Twesten O'Toole is not a mental health specialist. This opinion is also inconsistent with the claimant's GAF scores, which show only moderate symptoms of difficulty in social, occupational, or school functioning. Furthermore, there is indication in the record that the claimant magnifies her symptoms for drug seeking purposes. In view of the foregoing, such opinion is appropriately discounted.

(A.R. 26-27).

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner and a treating physician's opinion that a patient is disabled is not "giv[en] any special significance." 20 C.F.R. §§ 404.1527(e); 416.927(e); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Deaton v. Commissioner*, 315 F. App'x

595, 598 (6th Cir. 2009). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirement of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e); 416.927(e); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009); *Deaton*, 315 F. App'x at 598; *Warner*, 375 F.3d at 390.

It is the ALJ's job to resolve conflicting medical evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Mitchell v. Commissioner*, No. 08-6244, 2009 WL 1531879, at * 3 (6th Cir. June 2, 2009); *Martin v. Commissioner*, 170 F. App'x 369, 373 (6th Cir. 2006). Judicial review of the Commissioner's final administrative decision does not encompass resolving such conflicts. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) *Walters v. Commissioner*, 127 F.3d at 528; *see Price v. Commissioner*, No. 08-4210, 2009 WL 2514079, at * 2 (6th Cir. Aug. 19, 2009). The treatment relationship is one of the factors that the ALJ considers in determining what weight to give a medical opinion. Generally, more weight is given to the medical opinions of treating sources. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). If the ALJ finds that the treating source's opinion on the issues of the nature and severity of the claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case, the social security regulations specify that the ALJ is to give the medical opinion controlling weight. *Id.*; *see McGrew v. Commissioner*, No. 08-4561, 2009 WL 2514081, at * 3 (6th Cir. Aug. 19, 2009); *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009); *White v. Commissioner*, 572 F.3d 272, 285-86 (6th Cir. 2009). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically

acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2); *see Cox v. Commissioner*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773; *see Kidd v. Commissioner*, 283 F. App'x 336, 340 (6th Cir. 2008). An opinion that is based on the claimant's reporting of her symptoms is not entitled to any particular weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Mitchell v. Commissioner*, 2009 WL 1531879, at * 5-6; *Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(d), 416.927(d); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006); *see also Anthony v. Astrue*, 266 F. App'x 451, 458-59 (6th Cir. 2008).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d at 875-76; *see Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deem them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876. I find no violation of the treating physician rule. The ALJ's decision is supported by more than substantial evidence. Dr. Twesten-O'Toole's opinions concerning plaintiff's physical limitations are not supported by his own tests and treatments, and his exaggerated report of plaintiff's mental impairments conflicts with the assessment of Dr. Jawor, a specialist. Further, the ALJ complied with the procedural requirement of providing "good reasons" for the weight he gave to the opinions of plaintiff's treating physicians.

**4.**

Plaintiff argues in her reply brief that, "The ALJ's hypothetical to the Vocational Expert (VE) was [] inaccurate and left out many important facts and medical diagnoses." (Reply Brief at 1, docket # 14). Further, she argues that her attorney "presented the VE with a more accurate hypothetical and the VE rightly concluded that the Plaintiff was unable to perform substantial gainful activity." (*Id.* at 2). Raising new arguments in a reply brief is patently improper, and constitutes a violation of the court's Order Directing the Filing of Briefs. (10/9/08 Order, ¶ 1, docket # 8). It is well established that a reply brief is not the proper place to raise new arguments. *See United States v. Carson*, 560 F.3d 566, 587 (6th Cir. 2009); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th

Cir. 2008). A reply brief is the plaintiff's opportunity to respond to arguments raised for the first time in the defendant's brief. A plaintiff cannot wait until the reply brief to make new arguments, thus effectively depriving the opposing party of the opportunity to expose the weaknesses of plaintiff's arguments. *Scottsdale*, 513 F.3d at 553. I find that the new arguments raised in plaintiff's reply brief have been waived.

Assuming *arguendo* that the arguments had not been waived, they are patently meritless. The ALJ found that plaintiff's subjective complaints were not fully credible and that administrative finding is supported by more than substantial evidence. The ALJ was not bound by the VE's response to a hypothetical question asked by plaintiff's attorney, which assumed that all plaintiff's subjective complaints were fully credible. (Plf. Brief at 18). It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Anthony v. Astrue*, 266 F. App'x 451, 461 (6th Cir. 2008).

Finally, plaintiff ignores the ALJ finding at Step 4 of the sequential analysis that plaintiff was not disabled because she was capable of performing her past relevant work.[3] It is well established that vocational expert testimony is not required at Step 4 of the sequential analysis. *See Cruse v. Commissioner*, 502 F.3d 532, 545 (6th Cir. 2007); 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). The ALJ was not bound to accept hearing testimony of any witness, including the VE. *See Banks v. Massanari*, 258 F.3d 820, 827-28 (8th Cir. 2001). I find no error.

---

[3] The ALJ was not required to proceed to Step 5 and make an alternative holding. If at any point in the sequential evaluation process the ALJ determines that a claimant is not disabled, the ALJ is <u>not</u> required to go on to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006).

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated:  September 2, 2009          /s/  Joseph G. Scoville
                                   United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).